UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

JAY ABBOTT,                    )
                              )
        Plaintiff,             )
                              )
    vs.                        )         Case No. 2:09CV00015 ERW
                              )
MARK TROG, et al.,             )
                              )
        Defendants.            )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion to Strike Plaintiff's Notice of

Notice of Amended Pleading, Notice of Amended Pleading, and Amended Suit Pursuant to

Federal Rules of Civil Procedure 11(a), 12(f), and 15(a)(2) [doc. #14]; Plaintiff's Objection to

Defendant's Notice of Removal of a Civil Action from State Court [doc. # 8]; and Defendants'

Motion to Dismiss [doc. # 6].

## I.    BACKGROUND

Jay Abbott ("Plaintiff") is currently an inmate at Algoa Correctional Center in Jefferson

City, Missouri. Plaintiff was formerly an inmate at the Montgomery County Jail, located in

Montgomery County, Missouri. In the present lawsuit, Plaintiff asserts multiple claims arising out

of his incarceration at the Montgomery County Jail against Mark Trog, the Custodian of Records

for the Montgomery County Sheriff's Department; Montgomery County Sheriff Robert Davis;

and Montgomery County, Missouri (collectively, "Defendants").

The Court will now set forth the facts relevant to Plaintiff's claims. On June 7, 2005,

Plaintiff was arrested and confined to the Montgomery County Jail, where he was assigned to a

two person cell on June 8, 2005.  A month later, during a cell search on July 8, 2005, an article of contraband was found in Plaintiff's cell.  Plaintiff was eventually charged with possession of contraband and destruction of property.[1]  To assist in his defense, Plaintiff requested that his lawyer obtain jail records relating to cell and bunk assignments at the Montgomery County Jail. Without having obtained the records of cell and bunk assignments he desired, Plaintiff was convicted of possession of contraband on March 13, 2006.  At the same proceeding, he was acquitted of the destruction of property charge.  Roughly two years later, the original charge resulting in Plaintiff's confinement was dismissed without prejudice.

On August 4, 2008, Plaintiff sent an information request to Defendant Trog, seeking records of inmate bunk assignments, in addition to any written policies or special orders regarding general cell and bunk assignment practices.  On August 11, 2008, Defendant Trog sent Plaintiff a reply, which indicated that there were no cell or bunk assignment records on file, and that the policies and special orders he requested do not exist.  On August 22, 2008, Plaintiff filed another information request, this time seeking all jail records related to his incarceration for the time period of June 8, 2005, through September 29, 2005.  Defendant Trog notified Plaintiff that a charge of $38.10 was necessary to carry out his request, which Plaintiff thereafter provided.  On September 29, 2008, Plaintiff received 45 pages of records from Defendant Trog, none of which contained any information about Plaintiff's past cell or bunk assignments.  Roughly one month later, on October 27, 2008, Plaintiff sent a letter to Defendant Trog, explaining that he believed that there was an error of $12.50, or that he did not receive all of the records that he had

---

[1]The destruction of property and possession of contraband charges both stem from the July 8, 2005 cell search.

requested.[2]  Plaintiff asserts that he had not, as of filing these claims, received any reply from Defendant Trog regarding the requested refund.

On March 4, 2009, Plaintiff filed a *pro se* lawsuit against Defendants in the Circuit Court of Montgomery County, Missouri.  In that suit, Plaintiff alleged that Defendants violated his First and Fourteenth Amendment rights by failing to provide him with the records he requested prior to his trial for possession of contraband and destruction of property.  Plaintiff also contended that Defendants' assertion that no cell or bunk assignment records exist for the period Plaintiff requested constitutes a violation of the Freedom of Information Act, as well as the Missouri Sunshine Law.  *See generally* 5 U.S.C. § 552; Mo. Rev. Stat. §§ 610.010-.225.  Additionally, Plaintiff claimed that his request for a refund was not acted upon in accordance with Mo. Rev. Stat. § 610.023(3), and that no refund denial was provided to him in accordance with Mo. Rev. Stat. § 610.023(4).

Defendants subsequently removed the case to federal court, pursuant to 28 U.S.C. § 1446.  Defendants argue that removal was proper because this Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.  Shortly after they removed the case, on April 20, 2009, Defendants filed the pending Motion to Dismiss [doc. #6], seeking dismissal of all of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Three days later, on April 23, 2009, Plaintiff objected to Defendants' removal of the case, and moved to remand this matter to the appropriate

_____

[2]Seventeen dollars of the $38.10 that Plaintiff was required to pay was designated for copies.  At ten cents per page, Plaintiff paid for 170 pages of records.  However, Plaintiff was provided with only 45 pages of records.  He alleges that there are 125 pages of records missing.

Missouri court.[3]  More than one month later, Plaintiff filed a "Notice of Notice of Amended Pleading" [doc. #12], notifying the Court that he had filed a Notice of Amended Petition and an Amended Suit in the Circuit Court of Montgomery County, Missouri.  This act prompted Defendants to file the pending Motion to Strike [doc. #14].

## II.     DEFENDANTS' MOTION TO STRIKE

In this Motion, Defendants seek to have the Court strike the following: Plaintiff's Notice of Notice of Amended Pleading (filed in federal court), Plaintiff's Notice of Amended Pleading (purportedly filed in state court), and Plaintiff's Amended Suit (also purportedly filed in state court).  Defendants argue that Plaintiff's attempted amendment to his Complaint is improper because it was made without Defendants' written consent or the Court's permission, and because it is not signed.

Federal Rule of Civil Procedure 15(a)(2) provides that, if more than 21 days have passed since service or if a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  In this case, Plaintiff failed to obtain Defendants' consent to amend his pleading, and Plaintiff did not seek leave of this Court to file an amended complaint.  Because Plaintiff failed to comply with the requirements of the Federal Rules of Civil Procedure before attempting to amend his Complaint, this Court will grant Defendants' Motion to Strike.  The

---

[3]Plaintiff's actual motion is entitled Plaintiff's Objection to Defendants Motion to Remove a Civil Action from State Court [doc. #8], which the Court will refer to as "Plaintiff's Motion to Remand."

Court will also strike the "Amended Complaint" that Plaintiff filed on December 18, 2009, for

which Plaintiff also did not comply with the requirements of the Federal Rules of Civil Procedure.[4]

In Plaintiff's attempted amendments to his Complaint, he deleted all references to the

United States Constitution and federal law. Thus, it is clear that Plaintiff's attempted amendments

were made in an effort to avoid federal jurisdiction, and to make Defendants' removal of this case

improper.[5] The Court notes that even if Plaintiff had obtained Defendants' consent or requested

leave of this Court to amend his Complaint, there would be no effect on whether Defendants'

removal of this case was proper. This is because "[o]nce an action is properly removed from state

court to federal court, an amendment of the complaint rendering it outside the federal court's

jurisdiction does not defeat the original removal." *Gossmeyer v. McDonald*, 128 F.3d 481, 487-

88 (7th Cir. 1997); *see also Trinity Hospice, Inc. v. Miles*, 2006 WL 3825287, at *2 (E.D. Mo.

Dec. 27, 2006) (noting that "removal jurisdiction is determined based on the circumstances at the

time the notice of removal was filed").

## III.    PLAINTIFF'S MOTION TO REMAND

The Court will next address Plaintiff's Motion to Remand, to determine whether

Defendants' removal of this case was proper.

---

[4]The December 18, 2009 "Amended Complaint" is identical to the amended pleading that
was attached to Plaintiff's Notice of Notice of Amended Pleading, with the exception that Plaintiff
signed the later-filed "Amended Complaint," whereas he failed to sign the initial amended
pleading that was supposedly filed in state court. Due to Plaintiff's failure to comply with the
requirements of the Federal Rules of Civil Procedure, the Court need not reach the issue of
whether that initial amended pleading was valid even though it was not signed, as Defendants
argue in their Motion to Strike. Thus, Plaintiff's attempt to correct the signing error has no effect
on the Court's consideration of this Motion, or any of the remaining Motions.

[5]The issue of whether Defendants' removal of this case was proper is addressed in the
subsequent section.

## A.     LEGAL STANDARD

"Federal courts are courts of limited jurisdiction.  They possess only the power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  If a federal court takes action in a dispute over which it lacks subject matter jurisdiction, that action is a nullity.  *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951); *Hart v. Terminex Int'l*, 336 F.3d 541, 541-42 (7th Cir. 2003) (stating that it was "regrettable" that the case had to be dismissed for lack of subject matter jurisdiction "rendering everything that has occurred in [the] eight years [of litigation] a nullity").  However, "[f]ederal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given to them."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  A claim may be removed to federal court only if it could have been brought in federal court originally; thus, the diversity and amount in controversy requirements of 28 U.S.C. § 1332 must be met, or the claim must be based upon a federal question pursuant to 28 U.S.C. § 1331.  *See Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 260 (8th Cir. 2002).  If state law claims form part of the same case or controversy as claims arising as a federal question, a district court possesses supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(a).  The party invoking jurisdiction bears the burden of proof that the prerequisites to jurisdiction are satisfied.  *See Green v. Ameritrade, Inc.*, 279 F.3d 590, 595 (8th Cir. 2002); *In re Bus. Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir. 1993).

Removal statutes must be strictly construed because they impede upon states' rights to resolve controversies in their own courts.  *See Nichols v. Harbor Venture, Inc.,* 284 F.3d 857, 861 (8th Cir. 2002).  Although a defendant has a statutory right to remove a case when jurisdiction is proper, the plaintiff remains the master of the claim and any doubts about the

propriety of removal are resolved in favor of remand. *See In re Bus. Men's*, 992 F.2d at 183;

*McHugh v. Physicians Health Plan of Greater St. Louis*, 953 F. Supp. 296, 299 (E.D. Mo.

1997). An otherwise non-removable state law claim may be removed if it is joined with a claim

over which a federal court has original jurisdiction. *See* 28 U.S.C. § 1441(c). If "at any time

before final judgment it appears that the district court lacks subject matter jurisdiction," the case

must be remanded to the state court from which it was removed. 28 U.S.C.§ 1447(c).

## B.    DISCUSSION

The first issue the Court must address is whether this case could have originally been filed

in this, or another, federal court. *See Caterpillar, Inc. v. Williams*, 482 U.S.386, 392 (1987)

(explaining that the only state-court civil actions that can be removed to federal court are those

"that originally could have been filed in federal court"). It is not clear whether the diversity and

amount in controversy requirements have been met in this case, so the Court will examine

whether it has jurisdiction by virtue of the inclusion of a federal question. *See* 28 U.S.C. § 1331

(providing that a federal court has jurisdiction over "all civil actions arising under the

Constitution, laws, or treaties of the United States"). Plaintiff alleges in his Complaint that

Defendants violated the First and Fourteenth Amendments to the United States Constitution, and

also that Defendants violated his rights under the Freedom of Information Act.[6] These claims

clearly involve the interpretation of the United States Constitution, in addition to federal statutes;

therefore, this Court has federal question jurisdiction over them, under 28 U.S.C. § 1331.

---

[6]Plaintiff's complaint reads: "This action is brought pursuant to . . . [t]he First Amendment of the United States Constitution to redress grievances, and the Fourteenth Amendment of the United States Constitution, where no state shall deny any person within it's [sic] jurisdiction the equal protection of the law." Plaintiff also claims "that defendants . . . violated the plaintiff's rights under . . . the Freedom of Information act as described above."

When a case could have been filed in federal court due to the existence of a federal question, that case may not be removed unless "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. Because Plaintiff specifically mentions and cites to the Amendments and federal statute in his Complaint, it is clear from the face of Plaintiff's Complaint that these claims arise under federal law. Accordingly, removal of the First and Fourteenth Amendment claims, as well the Freedom of Information Act claim, was proper.

While it is clear that removal of Plaintiff's federal law claims was proper, the Court must now determine whether removal of the entire suit, including Plaintiff's state law claims, was proper. When both federal and state claims appear on the face of a complaint, a federal court has jurisdiction over the entire action "whenever the federal-law claims and state-law claims in the case 'derive from a *common nucleus of operative fact*' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)) (emphasis added, alteration in original). Additionally, a federal court may, in its discretion, decline to exercise supplemental jurisdiction over a state law claim if: the claim involves complex issues of state law; state law claims predominate over federal claims; all federal claims have been dismissed; or, under "exceptional circumstances," a compelling reason exists to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367.

In his Complaint, Plaintiff alleges violations various Missouri statutes, including the Missouri Sunshine Law,[7] in addition to his federal law claims. Specifically, Plaintiff asserts that the Montgomery County Jail did not maintain proper records, in violation of Mo. Rev. Stat. § 610.100(5), and that the jail refused to produce records in its possession, in violation of Mo. Rev. Stat. § 610.022(5). Factually intertwined with these two claims is Plaintiff's claim that Defendant Trog violated Mo. Rev. Stat. § 610.026(1)[8] by charging Plaintiff for 170 copies, when only 45 copies were produced. All of these purported violations of Missouri law stem from Plaintiff's attempt to locate jail records related to the assignment of jail cells, or more specifically, the assignment of bunks within jail cells.

Plaintiff's state law claims arise out of the very same allegations from which his federal law claims arise, specifically, that he was not provided with jail records that would have exculpated him. Thus, it is clear that the federal and state claims against the Defendants arise not only out of a common nucleus of fact, but out of precisely the same set of facts. Furthermore, none of the factors set forth in 28 U.S.C. § 1367 that would allow the Court to decline supplemental jurisdiction are present. Therefore, the Court may exercise jurisdiction over all of the claims raised by the Plaintiff, and Defendants' removal of this case was proper. Accordingly, Plaintiff's Objection to Defendant's Notice of Removal of a Civil Action from State Court [doc. #8] will be denied.

---

[7]Plaintiff's complaint merely mentions the Missouri Sunshine Law by name and gives no specific citation. The Missouri Sunshine Law is codified in Mo. Rev. Stat. §§ 610.010-.255.

[8]Mo. Rev. Stat. §610.026(1) provides: "Fees for copying public records . . . shall not exceed ten cents per page for a paper copy not larger than nine by fourteen inches, with the hourly fee for duplicating time not to exceed the average hourly rate of pay for clerical staff of the public governmental body."

## III.    DEFENDANTS' MOTION TO DISMISS

The Court will now turn to the final pending Motion in this case, Defendants' Motion to Dismiss.

### A.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In reviewing such a motion, the court must take all facts alleged in the complaint to be true and must construe pleadings in the light most favorable to the plaintiff. *See Chambers v. St. Louis County*, 247 Fed. Appx. 846, 848 (8th Cir. 2007) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)).

While a plaintiff does not have to "'set out *in detail* the facts upon which he bases his claim,' [Federal Rule of Civil Procedure] 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 554, 555 n.3 (2007) (quoting *Conley v. Gibson*, 255 U.S. 41, 47 (1957)) (internal citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). The factual allegations contained in the pleading must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must demonstrate his or her entitlement to relief, and "'a formulaic recitation of the elements of the cause of action will not do.'" *Ashcroft*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Therefore, "the court is free to ignore legal conclusions, unsupported conclusions,

unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."
*Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

**B.    DISCUSSION**

Although Plaintiff's Complaint sets forth his claims in a different format, for the purpose

of this Motion, the Court will categorize the Complaint as setting forth four distinct counts

against the Defendants.

1.    *Claim I - Violation of 42 U.S.C. § 1983*

In his Complaint, Plaintiff alleges that the actions of Defendants violated his First and

Fourteenth Amendment rights.  More specifically, Plaintiff contends that he was denied the equal

protection of the law in that he was not provided with Montgomery County Jail records that

would have aided in his defense.

The Court must initially determine under what legal standard to assess Plaintiff's general

claims that his First and Fourteenth Amendment rights have been violated.[9]  Although Plaintiff did

not expressly mention the statute, the characteristics of Plaintiff's constitutional claims fit the

mold of a claim arising under 42 U.S.C. § 1983.  Section 1983 states that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the United
> States . . . to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law.

In the present litigation, Plaintiff asserts that Montgomery County, Missouri and its agents

violated his First and Fourteenth Amendment rights, and prays for a remedy at law in the form of

---

[9]  The Court gives leeway to its interpretation of Plaintiff's Complaint because "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam).

compensatory and punitive damages. Such a claim is precisely the type of action contemplated by § 1983. Thus, this Court will construe Plaintiff's Complaint as to the above listed constitutional violations as a claim pursuant to § 1983.

The first issue to address with respect to § 1983 claims is whether the claims are brought against the individual defendants in their individual capacity, official capacity, or both. The Eighth Circuit has established that, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)). Courts have long been instructed to construe pro se pleadings liberally, in a manner that "encompass[es] any allegation stating federal relief." *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976); *see also Haines v. Krener*, 404 U.S. 519, 520-21 (1972); *cf. Williams-Bey v. Kempker*, 192 Fed. Appx. 569, 571 (8th Cir. 2006). However, a "*pro se* pleading is not a magic hat out of which a court may pull any claim it thinks should have been advanced." *Bracken v. Dormire*, 247 F.3d 699, 705 (8th Cir. 2001) (Arnold, J., dissenting). In this particular case, Plaintiff failed to specifically state whether he was suing Defendants Mark Trog and Sheriff Robert Davis in their individual, as well as official, capacities. Additionally, Plaintiff has not since demonstrated an intent to sue Defendants Trog and Davis in their individual capacities, by amending his Complaint or otherwise. *See generally Williams-Bey*, 192 Fed. Appx. at 571 (finding that the district court erred by considering only official capacity claims when Plaintiff's second pro se complaint specified that he was suing Defendants in both their individual and

official capacities). As a result, this lawsuit will be interpreted as having been filed against Defendants Trog and Davis in their official capacities only.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). As a result, a suit against a government official in his or her official capacity is treated as a lawsuit against the government entity itself. *See id.* In this case, because Plaintiff only sued Defendants Trog and Davis in their official capacities, this Court is obligated to treat the claims asserted against them as though they were asserted against the government entity for which they work, Montgomery County, Missouri.

A government entity may only be sued under § 1983 if the alleged deprivation of constitutional rights was inflicted by the entity's policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dept. of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "Official policy involves a 'deliberate choice to follow a course of action . . . made from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy." *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990)) (alteration in original). Alternatively, the plaintiff in a § 1983 case may establish the existence of a government entity's policy or custom by showing a "widespread, persistent pattern of unconstitutional misconduct" by government employees; "deliberate indifference to or tacit authorization of" unconstitutional misconduct by policymaking officials with notice of the misconduct; and "that the custom was the moving force behind the constitutional violation." *Id.*

13

Defendants assert that Plaintiff has failed to plead that any official policy or custom is responsible for the alleged violation of Plaintiff's constitutional rights. A review of Plaintiff's Complaint shows that Defendants' assertion is accurate. Plaintiff asserts only that he was denied access to records that would demonstrate his innocence by the Montgomery County Custodian of Records. Plaintiff does not assert that this denial stems from a Montgomery County policy or custom, as defined by the relevant case law. However, in light of the forgiving pleading standard for *pro se* litigants, coupled with the high standard that must be met to grant a motion to dismiss, the Court will not dismiss Plaintiff's 42 U.S.C. § 1983 claims solely on this ground.

Fatal to Plaintiff's § 1983 claims, however, is the rule that bars suits which cast doubt upon a criminal conviction, in the absence of a record indicating the invalidity of that conviction. When a plaintiff brings a cause of action under § 1983 that implies the invalidity of an otherwise valid criminal conviction, that plaintiff must prove that the conviction or sentence which is implicitly challenged "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Thus, a claim for damages that would, if successful, cast doubt upon the validity of a previous criminal conviction is not cognizable under § 1983 unless the previous conviction has been reversed, expunged or otherwise invalidated. *See id.*

In this case, Plaintiff asserts that he was denied access to evidence that would have exculpated him of his possession of contraband charge, under which he was convicted. It is this alleged withholding of evidence that Plaintiff contends has caused his "illegal incarceration." (Pl.'s Complaint, doc. #3, p.6). Plaintiff's contention that Defendants prevented him from

obtaining evidence that would have demonstrated his innocence undoubtedly calls into question the validity of his criminal conviction. However, that conviction has never been declared invalid, as required by *Heck*. To the contrary, Plaintiff appealed his conviction to the Missouri Court of Appeals, Eastern District, where his conviction was affirmed. *Missouri v. Abbott*, 227 S.W.3d 531 (Mo. Ct. App. 2007). Furthermore, there is no record showing that Plaintiff successfully filed a writ of habeas corpus in any court, or that he has in any other way cast legitimate doubt upon the validity of his conviction.[10]

The Court finds that because Plaintiff has failed to demonstrate that his previous conviction has been invalidated, Plaintiff's § 1983 constitutional claims must be dismissed. Accordingly, the Court will grant Defendants' Motion to Dismiss as to Plaintiff's § 1983 constitutional claims.

### 2. *Claim II - Violation of the Freedom of Information Act*

In his Complaint, Plaintiff vaguely alleges that Defendants violated the Freedom of Information Act by not producing certain Montgomery County Jail records that he requested.[11] The Freedom of Information Act requires agencies of the federal government to maintain and, when called upon, to produce various public records created by the agencies. *See* 5 U.S.C. §§ 551-559. The Freedom of Information Act applies only to federal agencies, and "has no application to state governments." *Davidson v. Georgia*, 622 F.2d 895, 897 (5th Cir. 1980).

---

[10]The Court understands that the crime with which Plaintiff was originally charged was dismissed, however, he was charged with a second offense while incarcerated, for which he was convicted, which conviction was affirmed.

[11]At no point does Plaintiff specify the manner in which Defendants allegedly violated the Freedom of Information Act.

The Defendants in this case are not agencies of the federal government, nor do they represent any federal agency. Rather, the Montgomery County Jail, Sheriff and Sheriff's Department, and Custodian of Records are all agents of Montgomery County, Missouri. Plaintiff, therefore, cannot allege any set of facts against any of the Defendants that would entitle him to relief under the Freedom of Information Act. As a result, the Court will grant Defendants' Motion to Dismiss as to Plaintiff's Freedom of Information Act claim.

### 3. *Claim III - Violation of the Missouri Sunshine Law*

Plaintiff also claims that Defendants violated the Missouri Sunshine Law by failing to produce the jail records he requested. The so-called "Missouri Sunshine Law" requires various government entities to make public records available for inspection. *See* Mo. Rev. Stat. § 610.023; *see also* Mo. Rev. Stat. § 610.011 ( "All public records of public governmental bodies shall be open to the public for inspection."). In order for a particular record to be considered a "public record" under the Missouri Sunshine Law, and therefore subject to the disclosure requirements of Mo. Rev. Stat. § 610.011, it must somehow affect the general public. *See Bauer v. Kincaid*, 759 F. Supp. 575, 583 (W.D. Mo. 1991) (citing *McLachlan v. McNary*, 684 S.W.2d 534, 558 (Mo. Ct. App. 1984)). Additionally, the Missouri Sunshine Law only compels the production of records that are actually in existence at the time of the request, and Missouri courts have further held that a government entity cannot be forced to create records that do not exist. *See* Mo. Rev. Stat. § 610.023; *Jones v. Jackson County Circuit Court*, 162 S.W.3d 53, 59 (Mo. App. W.D. 2005).

In addition to identifying certain records that must be disclosed, the Missouri Sunshine Law also requires that certain agencies keep certain records. *See* Mo. Rev. Stat. § 610.100. For

16

example, and pertinent to this case, police agencies are required to keep records of incidents, investigations, or arrests. *See* Mo. Rev. Stat. § 610.100(2). The statute expressly defines an arrest as "an actual restraint of the person of the defendant . . . for a criminal violation which results in the issuance of a summons or the person being booked." Mo. Rev. Stat. § 610.100(1)(1). An incident report is defined as "a record of a law enforcement agency consisting of the [victim's information] and immediate facts and circumstances surrounding the initial report of a crime or incident," while an investigative report is defined as a record "inquiring into a crime or suspected crime."[12] Mo. Rev. Stat. 610.100.1(4)-(5).

The Missouri Sunshine Law clearly and unambiguously establishes what records police agencies are required to keep as "public records." Records of inmate cell and bunk assignments are not specifically included in the list of required records, nor do they fall within any of the general categories of records required (records of incidents, investigations, or arrests). This Court finds that records of cell and bunk assignments cannot be considered "arrest records" within the meaning of the statute because, although cell and bunk assignments are relevant to actual physical restraint, they do not stem from the restraint which resulted in a summons. The Court also finds that the records Plaintiff seeks are not "incident reports" because incident reports contemplate the victim's circumstances and information; cell and bunk assignments clearly do not. Finally, the Court finds that records cell and bunk assignments cannot be considered to be

---

[12] "Incidents" is not a term expressly defined by the statute, though" incident report" is. This leads the Court to conclude that records of incidents are kept as incident reports. Similarly, "investigations" is not a term expressly defined by the statute, though investigative reports are. This leads the Court to conclude that records of investigations are kept as investigative reports. *See* Mo. Rev. Stat. §610.100(2).

"investigative reports." This is because investigative reports focus on the search for unknown information, while cell and bunk assignments involve no such search. Because records of inmate cell and bunk assignments do not fall within the enumerated categories of Mo. Rev. Stat. § 610.100, the law does not require that such records be maintained. As a result, Defendants have not violated the Missouri Sunshine Law by failing to maintain records of cell and bunk assignments at the Montgomery County Jail.

Plaintiff also contends that the Montgomery County Jail failed to produce the records that it does possess. Defendant Trog's reply to Plaintiff's initial records request indicated that no records of cell and bunk assignments exist for the period Plaintiff requested. Contrary to Defendants' contention, Plaintiff's acknowledgment of this correspondence is not sufficient to create the assumption that Plaintiff admitted that the requested records do not exist. Dispositive in this controversy, however, is the requirement that records sought for production under the Missouri Sunshine Law must be public records, which are defined as records that affect the general public. *See* Mo. Rev. Stat. § 610.011; *Bauer v. Kincaid*, 750 F. Supp. 575, 583 (W.D. Mo. 1991). Plaintiff's cell and bunk records do not directly affect the public, rather, they concern the housing status of an individual inmate. The general public has no interest in knowing which cell and bed to which each inmate in the state is assigned, or in knowing which inmates are assigned to be roommates. As a result, those records are not subject to the disclosure requirements of the Missouri Sunshine Law. Even if Plaintiff's allegation that cell and bunk assignment records exist is assumed to be true, as it must be for the purposes of this Motion, the Missouri Sunshine Law does not require the production of the records, and there is no remedy

available to Plaintiff under this statute. Accordingly, Defendants' Motion to Dismiss will be granted as to Plaintiff's Missouri Sunshine Law claims.

4.    *Claim IV - Violation of Mo. Rev. Stat. § 610.026*

Finally, in his Complaint, Plaintiff cites to Mo. Rev. Stat. § 610.026, which provides that copies of public records shall be available for copy, and that copies of such public records are not to exceed the statutory rate of $0.10 per page. Plaintiff then states that he paid $17.00 for copies, but received only 45 pages of documents, leaving a balance of $12.50, or 125 copies, for which no accounting is made. For the purpose of this Motion, the Court must assume that Plaintiff's assertions are true. *Chambers v. St. Louis County*, 247 Fed. Appx. 846, 848 (8th Cir. 2007) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995))

It appears to the Court that Plaintiff cited Mo. Rev. Stat. § 610.026 for a different purpose than the statute was intended. More specifically, Plaintiff cites the statute in an effort to bolster his other claims, but does not actually assert a violation of the statute itself. Plaintiff contends that because he was charged $17.00 for copies, as opposed to $4.50, there must have been another 125 pages of documents that were not given to him. Plaintiff then alleges that those documents are being withheld in violation of Plaintiff's constitutional rights, and in violation of both the Freedom of Information Act and the Missouri Sunshine law. Thus, although it is labeled in his Complaint as a "Cause of Action," Plaintiff's citation to the statutory fee ceiling is used entirely in support of his other claims.

At no point in his Complaint does Plaintiff allege that he was overcharged in violation of the statute.[13]  Plaintiff may very well be able to allege a set of facts whereby he would be entitled to relief.  However, construing Plaintiff's complaint as such merely because the Plaintiff has cited a law in support of his other claims, extends past the realm of a liberal construction and into the realm of advocacy.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (noting that "we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant").  Plaintiff has failed to allege a violation of Mo. Rev. Stat. § 610.026,[14] and this Court will grant Defendants' Motion to Dismiss as to this claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike Plaintiff's Notice of Notice of Amended Pleading, Notice of Amended Pleading, and Amended Suit Pursuant to Federal Rules of Civil Procedure 11(a), 12(f), and 15(a)(2) [doc. #14] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Objection to Defendant's Motion to Remove a Civil Action from State Court [doc. # 8] is **DENIED.**

---

[13]In the statement of facts of his Complaint, Plaintiff asserts that he contacted Defendant Trog seeking a reply regarding an error of $12.50.  The error about which Plaintiff complains seems to have been the 125 pages of missing records, as opposed to being overcharged by the Defendant.

[14]The Court's determination that Plaintiff failed to allege a violation of Mo. Rev. Stat. § 610.026 does not preclude Plaintiff from seeking a refund in the future.  The Court is merely indicating that Plaintiff has not alleged a violation of the statute based on the pleadings, and is not finding that Plaintiff lacks a sufficient case to survive all dispositive motions.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure [doc. # 6], is **GRANTED**.  Plaintiff's claims are **DISMISSED**, with prejudice.

Dated this <u>14th</u> Day of <u>January</u>, 2010.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE